# UNITED STATES DISTRICT COURT

# DISTRICT OF SOUTH DAKOTA

# CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MATTHEW LEDDON,<br><br>Defendant. | 3:20-CR-30061-RAL<br><br>**REPORT AND RECOMMENDATION FOR DISPOSITION OF MOTION TO SUPPRESS** |

In this prohibited person case, Matthew Leddon seeks to suppress a firearm and other evidence obtained during, and as a result of, a warrantless roadside search of his vehicle. Because the search was a consensual one, and in conformity with constitutional strictures, Leddon's suppression motion must be denied.

## BACKGROUND

On December 24, 2019, at approximately 3:50 p.m., dispatch notified South Dakota Highway Patrol Trooper Jordan Anderson that a vehicle was stuck in a ditch near mile marker 233 on Interstate 90. Anderson drove to the location, observed a red Chrysler in the snow-covered median, and contacted Leddon, the vehicle's lone occupant. When asked how he wound up in the ditch, Leddon explained that he was looking down at his phone and had to swerve to miss a deer. At Anderson's request, Leddon walked over to, and sat in the front passenger seat of, the patrol car.

Inside the vehicle, Trooper Anderson ran a status check and asked Leddon where he was headed.  Leddon said he was on his way to Sioux Falls to see his son.  In response to Anderson's questions, Leddon denied he had anything to drink or smoke.  Upon learning that Leddon was on probation (for drugs of some sort), Anderson bluntly asked Leddon what his narcotic of choice was.  Leddon revealed that he had been arrested with methamphetamine.  Then, without answering Anderson's follow-up inquiry, Leddon briefly gestured (pointed) toward his car and said, "Go right ahead."  Roughly a minute later, Leddon acknowledged he was on warrantless search and seizures, again gestured and pointed toward his car, and made this remark to Anderson:  "Like I said, vehicle is open and everything."  The two conversed for about another minute at which point Anderson announced that "I'd like to take a look in the vehicle and make sure there's nothing in there."  Leddon replied with an affirmative nod and gesture in the direction of his car, and told Anderson to "Go right ahead."

Upon hearing this, Trooper Anderson went over to and searched Leddon's vehicle.  In the trunk of it, Anderson found a .40 caliber Smith & Wesson pistol.  He took possession of the gun, returned to his patrol car, and placed Leddon under arrest and in the back seat of the car.  Anderson then contacted Leddon's state probation officer and briefed her on the situation.  She advised that Leddon used to be a law enforcement officer and he confirmed this to be true.  Leddon subsequently waived his *Miranda* rights, agreed to answer questions, and did so.  Afterward, Anderson transported Leddon to the Brule County Jail in Chamberlain, South Dakota, where he

was lodged in on a state felon in possession of firearm charge.  Anderson recorded the events that day, between himself and Leddon, on body and dash cameras.

Ultimately, a federal grand jury indicted Leddon and charged him with being a prohibited person in possession of a firearm.  Following his arrest on the federal charges, Leddon moved to suppress the evidence seized from the search of his vehicle on Fourth, Fifth, and Sixth Amendment grounds and under Article VI, §11 of the South Dakota Constitution.  The Court held an evidentiary hearing on the motion at which it received four exhibits into evidence and took in-person testimony from Trooper Anderson.

## DISCUSSION

### A.  Consent

The government argues that Leddon consented to the search of his car.  No warrant was necessary, the government says, because consent is one of the few recognized exceptions to the warrant and probable cause requirements.

The Fourth Amendment protects "[t]he right of the people to be secure in their . . . effects, against unreasonable searches and seizures."[1]   A consensual search is consonant with this Amendment because it is "reasonable for the police to conduct a search once they have been permitted to do so."[2]  Thus, a "warrantless search is valid if

---

[1]U.S. Const. amend. IV.

[2]*Florida v. Jimeno*, 500 U.S. 248, 251 (1991).

conducted pursuant to the knowing and voluntary consent of the person subject to [a] search."[3]  The consent issue "turns not on the defendant's subjective state of mind but [rather] on whether the officer reasonably believed the defendant consented."[4]

The government bears the burden of showing, by a preponderance of the evidence, that a reasonable person would have believed that the consent alleged to have been given was the product of an "essentially free and unconstrained choice" and not "the result of duress or coercion," based on the "totality of the circumstances."[5]  The Fourth Amendment is not satisfied by "mere submission to a claim of lawful authority."[6]  Consent though may be inferred from a person's "words, gestures, and other conduct."[7]

Eighth Circuit case law provides a catalog of factors for a court to consider in determining the validity of a defendant's consent to search.  These factors include the defendant's age, education, intelligence, sobriety, and experience with the law; the length of detention or questioning; the substance of any discussion between the defendant and police preceding the consent; whether the defendant was free to leave or

---

[3]*United States v. Cedano-Medina*, 366 F.3d 682, 684 (8th Cir. 2004).

[4]*United States v. Espinoza*, 885 F.3d 516, 523 (8th Cir. 2018).

[5]*United States v. Willie*, 462 F.3d 892, 896 (8th Cir. 2006) (*quoting Schneckloth v. Bustamonte*, 412 U.S. 218, 225, 227, 248 (1973)).

[6]*Cedano-Medina*, 366 F.3d at 684.

[7]*United States v. Jones*, 254 F.3d 692, 695 (8th Cir. 2001).

was subject to restraint; and whether the defendant's contemporaneous reaction to the search was consistent with consent.[8]  These factors can be grouped into three categories: (1) the personal characteristics and behavior of the defendant; (2) the environment surrounding the defendant at the time he gave consent; and (3) the interaction between police and the defendant.[9]

Leddon claims that he never gave his consent.  He says that any utterances he made were in response to Trooper Anderson's declaration of his intent to search Leddon's car.

Leddon's statement and body language, however, evinced a willingness on his part to allow Trooper Anderson to search the car.  Leddon initially gestured in the direction of his car and told Anderson to "Go right ahead."[10]  Just over a minute later, Leddon pointed again toward the vehicle and reminded Anderson that the "vehicle is open and everything."[11]  Then when Anderson said, "[He]'d like to take a look in the vehicle and make sure there's nothing in there," Leddon gave him the go ahead ("Yes, sir, go right ahead"), showing his assent to this with both head and hand signals.[12]  And

---

[8]*See United States v. Va Lerie*, 424 F.3d 694, 709 (8th Cir. 2005) (*en banc*).

[9]*See United States v. Garcia-Garcia*, 957 F.3d 887, 896-97 (8th Cir. 2020).

[10]Mot. Hrg. Ex. 1 08:16-08:19 (Jan. 12, 2021); Mot. Hrg. Tr. 13-14 (Jan. 12, 2021).

[11]Mot. Hrg. Ex. 1 at 09:22-09:25; Mot. Hrg. Tr. at 14-15.

[12]*See* Mot. Hrg. Ex. 1 at 10:48-10:52; Mot. Hrg. Tr. at 17-18.

Leddon never objected to the search as it began or unfolded, in any way.[13]  Leddon's expressions and lack of opposition are reasonably indicative of his consent to the car search.[14]

Contrary to what he maintains, Leddon's consent was not coerced.  Leddon offered – twice – to let Trooper Anderson search the car before Anderson ever mentioned anything about wanting to do so (one of them prior to the subject of a vehicle search even coming up).[15]  When Anderson observed he would like to look in the vehicle (to assure himself there was no contraband in it), Leddon told him to "Go right ahead" with affirming gestures.  At no time did Anderson lie, misrepresent or make any false claims of legal authority to get Leddon to consent.[16]  Leddon's consent was neither tainted with coercion nor acquiesced to because he reasonably believed he had no other options.[17]

_____

[13]*See* Mot. Hrg. Ex. 1; Mot. Hrg. Tr. 22-23.

[14]*See Garcia-Garcia*, 958 F.3d at 896; *United States v. Lopez-Mendoza*, 601 F.3d 861, 866-67 (8th Cir. 2010); *United States v. Smith*, 260 F.3d 922, 923, 925 (8th Cir. 2001); *see also Cedano-Medina*, 366 F.3d at 686-87 (defendant's statements "yeah, go ahead, you bet" provided support for contention and theory that defendant consented to trooper's search).

[15]*See* Mot. Hrg. Ex. 1 at 08:18-08:22, 09:24-09:36.

[16]*See* Mot. Hrg. Ex. 1.

[17]*See and compare with Bumper v. North Carolina*, 391 U.S. 543, 548-50 (1968); *United States v. Escobar*, 389 F.3d 781, 786 (8th Cir. 2004).

Leddon's course of conduct, leading up to and during the search, was consistent with voluntary consent.[18]  Nothing in Leddon's personal characteristics suggests he was especially susceptible to having his will "overborne" or that "his capacity for self-determination was critically impaired" when he consented to search.[19]  Leddon was 43 years old, a college graduate, former law enforcement officer, and felon who appeared sober, of sound mind, and of above average intelligence.[20]  These characteristics are indicative of someone who was "competent to understand the nature of his acts,"[21] and had the aptitude to recognize and withstand police coercion.[22]

Nor was the environment one that would support a presumption of involuntary choice.  Leddon was not handcuffed, in custody, or detained before or when he gave his consent and could come and go as he pleased.[23]  He met with, and briefly talked to, Trooper Anderson late in the afternoon alongside an interstate highway (a public place) and intermittently answered questions between phone calls and text messages up to

---

[18]*See Garcia-Garcia*, 957 F.3d at 897; *United States v. Mendoza*, 677 F.3d 822, 829 (8th Cir. 2012).

[19]*See United States v. Watson*, 423 U.S. 411, 424 (1976); *United States v. Magallon*, Nos. 19-1820, 19-1902, 2021 WL 68067 at **11-12 (8th Cir. Jan. 8, 2021).

[20]*See* Dkt. No. 14; Mot. Hrg. Ex. 1;  Mot. Hrg. Tr. at 18, 22, 32-33, 44.

[21]*Willie*, 462 F.3d at 896.

[22]*See United States v. Gallardo*, 495 F.3d 982, 989 (8th Cir. 2007).

[23]*See* Mot. Hrg. Ex. 1 at 02:56-10:58; Mot. Hrg. Tr. at 16-17, 20, 40.

and during the search.[24]   This was not an encounter in which the setting and atmosphere were "secluded or threatening" so that Leddon would reasonably feel he was under compulsion.[25]

Although Leddon was never told he was free to leave or *Mirandized*, these factors are not required for a consent search to be voluntary.[26]  No credible evidence shows that Trooper Anderson used force, pressure, intimidation, trickery, or strong-arm tactics to sway Leddon.[27]   Anderson never brandished a weapon, laid hands on Leddon before the search, or threatened him in any way; the pre-search interaction lasted less than 10 minutes; and Anderson kept a cordial demeanor at all times.[28]

Notably, Leddon never objected – in any manner – to Trooper Anderson's search of the car.   Instead, Leddon orally apprised Anderson to "Go right ahead" while synchronously gesturing with a confirmatory nod and finger point.    His

---

[24]*See* Mot. Hrg. Ex. 1 at 1:00-15:37; Mot. Hrg. Tr. at 8.

[25]*See Gallardo*, 495 F.3d at 989 (holding that a discussion in a patrol car was not inherently coercive because the car "was parked on the shoulder of a well-traveled Interstate highway during the middle of a summer day").

[26]*See Schneckloth*, 412 U.S. at 246, 249; *Magallon*, 2021 WL 68067 at **11-12; *United States v. Lee*, 356 F.3d 831, 834 (8th Cir. 2003).

[27]*See Mendoza*, 677 F.3d at 829; *see also United States v. Hampton*, 260 F.3d 832, 835 (8th Cir. 2001) (lack of any use of force, coercion, or deception by the police contributed to the reasonableness of finding that defendant voluntarily consented).

[28]*See Willie*, 462 F.3d at 896 (explaining that the nature, length, and location of the interaction between the police and defendant are factors relevant to determining whether defendant's will was overborne).

contemporaneous reactions to Anderson's desire to look in the car reflected voluntary consent.[29]  Given Leddon's own statements and his non-verbal cues, it was objectively reasonable for Anderson to believe that Leddon understood what Anderson wanted to do (search Leddon's car) and knowingly and voluntarily consented to the same.[30]

## B.  Probation Condition

Having determined that Leddon's consent was valid and effective, the Court need not pass on the government's alternative argument, namely, that Trooper Anderson could conduct a warrantless search of the vehicle under the search condition of Leddon's probation, and declines to do so.  Deciding it would be obiter dictum and is unnecessary to the disposition of Leddon's motion.

## C.  Fruit of the Poisonous Tree

Because a reasonable officer could believe that Leddon consented to the search of his car, Trooper Anderson's search did not violate Leddon's Fourth Amendment right to be secure against unreasonable searches and seizures.  Since there was no constitutional violation or "poisonous tree" for any "tainted fruit" to grow or fall from,

---

[29]*See Garcia-Garcia*, 957 F.3d at 897-98 (*citing United States v. Correa*, 641 F.3d 961, 967 (8th Cir. 2011)).

[30]*See Magallon*, 2021 WL 68067 at *12; *Garcia-Garcia*, 957 F.3d at 897-98; *Lopez-Mendoza*, 601 F.3d at 867; *Smith*, 260 F.3d at 924; *see also United States v. Granados*, 587 F.Supp.2d 1112, 1122 (D.S.D. 2008) (defendant voluntarily consented to the search of his hotel room and vehicle where he was detained in a squad car for only a few minutes, neither threatened nor abused by officers nor promised leniency or better treatment, and the consent occurred in a public place), *aff'd*, 596 F.3d 970 (8th Cir. 2010).

it follows that the evidence obtained during, and as a by-product of, the search of Leddon's vehicle is fully admissible against him at trial.[31]

## CONCLUSION

Trooper Anderson lawfully searched Leddon's vehicle with his permission. Based on Leddon's statements and non-verbal signals, Anderson could reasonably conclude that Leddon consented to the search and that he gave his consent voluntarily – that is, without duress or coercion, express or implied.

And there is no reason to exclude the firearm acquired from the search as "tainted fruit." The search was valid and so was the seizure of the gun. The law, as applied to Leddon's case, foils his ability to suppress the evidence seized and derived from his vehicle. The government may therefore use this evidence, in its case-in-chief against him, at trial.

## RECOMMENDATION

In accordance with the authorities and legal analysis set forth in this report, and the record now before the Court, it is hereby

RECOMMENDED that Leddon's Motion to Suppress[32] be denied in all respects.

---

[31]*See Garcia-Garcia*, 957 F.3d at 898; *see also Granados*, 587 F.Supp.2d at 1121, 1123, 1130 (because the searches of defendant's room and vehicle were consensual, the subsequent statements were not "tainted" by or the "poisonous fruit" of the searches so as to violate the Fourth Amendment and require suppression).

[32]*See* Dkt. No. 50.

## NOTICE

The parties have 14 calendar days after service of this report and recommendation to file their objections to the same.[33] Unless an extension of time for cause is later obtained,[34] failure to file timely objections will result in the waiver of the right to appeal questions of fact.[35]  Objections must "identify[] those issues on which further review is desired[.]"[36]

Dated this 20th day of January, 2021, at Pierre, South Dakota.

BY THE COURT:

MARK A. MORENO
UNITED STATES MAGISTRATE JUDGE

---

[33]*See* 28 U.S.C. §636(b)(1); Fed. R. Crim. P. 59(b).

[34]*See Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990); *Nash v. Black*, 781 F.2d 665, 667 & n.3 (8th Cir. 1986) (*citing Thomas v. Arn*, 474 U.S. 140, 155 (1985)).

[35]*See Thompson*, 897 F.2d at 357; *Nash*, 781 at 667.

[36]*Arn*, 474 U.S. at 155.