UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| UNITED STATES OF AMERICA, Plaintiff, vs. MATTHEW LEDDON, Defendant. | 3:20-CR-30061-RAL **OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION IN PART AND DENYING MOTION TO SUPPRESS** |
|---|---|

A federal grand jury indicted Matthew Leddon (Leddon) for prohibited person in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(d). Doc. 1. Leddon moved to suppress from use at trial evidence seized from his vehicle and argued that such evidence was gathered in violation of the Fourth Amendment. Doc. 50. Magistrate Judge Mark A. Moreno held a suppression hearing during which he received four exhibits into evidence and heard testimony from South Dakota Highway Patrol Trooper Jordan Anderson. Docs. 57, 60. Thereafter, Judge Moreno issued a Report and Recommendation recommending that the motion to suppress be denied in its entirety. Doc. 62. Leddon has filed an objection to that Report and Recommendation. Doc. 67. The United States has filed a response. Doc. 68.

This Court reviews a report and recommendation under 28 U.S.C. § 636(b)(1), which provides in relevant part that "[a] judge of the [district] court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." However, "[i]n the absence of an objection, the district court is not required

'to give any more consideration to the magistrate's report than the court considers appropriate.'" United States v. Murillo-Figueroa, 862 F. Supp. 2d 863, 866 (N.D. Iowa 2012) (quoting Thomas v. Arn, 474 U.S. 140, 150 (1985)). Having conducted a de novo review of those portions of the Report and Recommendation to which Leddon objects, this Court adopts the Report and Recommendation in part and denies Leddon's motion to suppress.

I.  **Facts Relevant to Objection to Report and Recommendation**

On Christmas Eve, December 24, 2019, Leddon was travelling on Interstate 90 through central South Dakota to visit his son in Sioux Falls. Ex. 1A at 4; Mot. Hr'g Tr. at 8. At some point, Leddon apparently looked down at his cellphone and then swerved to miss a deer, causing his vehicle to go off the roadway into the ditch of the median. Ex. 1A at 1, 6; Mot. Hr'g Tr. at 11. After receiving a call from dispatch at around 3:50 p.m., Trooper Anderson responded to the scene and suggested that he and Leddon sit inside his patrol car until a tow truck arrived. Ex. 1A at 2; Mot. Hr'g Tr. at 8–11.

Inside the patrol car, Trooper Anderson asked Leddon some questions. Ex. 1; Ex. 1A at 4–5. In response, Leddon explained that he was driving from Rapid City to Sioux Falls to see his son and denied that he had been drinking or smoking. Ex. 1; Ex. 1A at 5. While the two were conversing, Trooper Anderson ran a status check on Leddon on his computer. Ex. 1; Mot. Hr'g Tr. at 13. He learned that Leddon was on probation or parole. Mot. Hr'g Tr. at 13. With this knowledge in hand, Trooper Anderson and Leddon had the following exchange[1]:

> Trooper Anderson: What was your choice? Of narcotic?
> Leddon: Oh sorry, I was arrested with methamphetamine.
> Trooper Anderson: Do you have any in your vehicle today?
> Leddon: Nope, go right ahead.

---

[1] The text of this exchange is taken from the actual audio and differs from a transcript someone later typed.

Ex. 1 at 8:06–8:18.[2] As Leddon responded to Trooper Anderson's second question, he shook his head "no" and pointed toward his vehicle in the median. Ex. 1 at 8:16–8:18. Trooper Anderson continued to ask Leddon questions, and roughly a minute later, the two discussed Leddon's probation conditions:

> Trooper Anderson: Yup. Are you on warrantless searches and seizures and all that?
> Leddon: I believe so, yeah.
> Trooper Anderson: K.
> Leddon: Like I said, vehicle is open and everything.

Ex. 1 at 9:19–9:25; Ex. 1A at 6. Trooper Anderson and Leddon continued to chat further. Ex. 1A at 6–7. Leddon relayed once again how his vehicle ended up in the ditch of the median. Ex. 1A at 6. Finally, after they had been sitting in the patrol car for almost 11 minutes, Trooper Anderson said, "Alright, I am going to take a look in the vehicle and make sure there's nothing in there." Ex. 1 at 10:48; Ex. 1A at 7. To which Leddon replied, "Yes, sir, go right ahead." Ex. 1 at 10:51; Ex. 1A at 7.

While Leddon remained in the patrol car, Trooper Anderson searched his vehicle. Mot. Hr'g Tr. at 18. Eventually Trooper Anderson opened the trunk of the car and found a .40 caliber Smith & Wesson pistol. Ex. 1A at 9; Mot. Hr'g Tr. at 18–19. Trooper Anderson confronted Leddon with his findings, and Leddon acknowledged that he was a felon and explained that the gun was his son's and Leddon was taking it to him in Sioux Falls. Ex. 1A at 7; Mot. Hr'g Tr. at 20. Trooper Anderson took possession of the gun, returned to his patrol car, and placed Leddon under arrest and in the back seat of his car. Mot. Hr'g Tr. at 20. Then Trooper Anderson called Leddon's state probation officer and apprised her of the situation. Ex. 1A at 8–9; Mot. Hr'g Tr. at 20–21. She

---

[2] Exhibit 1 is video footage from that day, recorded from two different angles. The first angle is the front dash camera while the second angle is the in-car camera. When referencing Leddon's body language, this Court refers to the in-car camera angle.

confirmed that Leddon is a felon and informed Trooper Anderson that Leddon was a former law enforcement officer. Mot. Hr'g Tr. at 22.

## II. Discussion

Leddon objects to Judge Moreno's factual and legal findings that Leddon voluntarily consented to the search of his vehicle. Under the Fourth Amendment, searches conducted without a warrant are "presumptively unreasonable." United States v. Cedano-Medina, 366 F.3d 682, 684 (8th Cir. 2004) (citing Katz v. United States, 389 U.S. 347, 356–57 (1967)). However, this general rule is subject to a few specifically established exceptions. Id. Consent to search is one such exception. United States v. Escobar, 389 F.3d 781, 784 (8th Cir. 2004). "A warrantless search is valid if conducted pursuant to the knowing and voluntary consent of the person subject to a search." United States v. Brown, 763 F.2d 984, 987 (8th Cir. 1985) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973)). Whether consent is voluntarily given is a question of fact. Escobar, 389 F.3d at 784 (citing Schneckloth, 412 U.S. at 248–49). This determination necessarily involves two inquiries: (1) whether consent was given, and (2) whether it was given voluntarily. United States v. Jones, 254 F.3d 692, 695–96 (8th Cir. 2001). The government bears the burden of proving consent by a preponderance of evidence. United States v. Lopez-Mendoza, 601 F.3d 861, 866 (8th Cir. 2010). The government does not meet its burden "by showing mere acquiescence to a claim of lawful authority." Escobar, 389 F.3d at 785 (citing Bumper v. North Carolina, 391 U.S. 543, 548–49 (1968)).

Leddon's primary contention is that he did not give Trooper Anderson consent to search his car at all. Whether Leddon consented to a search of his vehicle is an objective inquiry, turning on whether the individual's words and conduct would lead a reasonable officer to believe he consented. United States v. Espinoza, 885 F.3d 516, 523 (8th Cir. 2018). Consent is determined

based on the totality of circumstances, id., and can be inferred from words, gestures, and other conduct, Jones, 254 F.3d at 695.

Leddon first objects to portions of Judge Moreno's factual account of the dialogue between Leddon and Trooper Anderson. In particular, there is a point in their conversation in which Trooper Anderson discusses searching Leddon's vehicle. Judge Moreno found that Trooper Anderson said, "I'd like to take a look in the vehicle and make sure there's nothing in there." Doc. 62 at 2. However, the recording reveals that Trooper Anderson actually said, "Alright, I am going to take a look in the vehicle and make sure there's nothing in there." See Ex. 1 at 10:48; see also Ex. 1A at 7; Mot. Hr'g Tr. at 17. Leddon responded, "Yes, sir, go right ahead" and gestured toward his vehicle. Ex. 1 at 10:51; Ex. 1A at 7; Mot. Hr'g Tr. at 17.

This Court agrees with Leddon that there is a distinction between those two statements. "I'd like to take a look in the vehicle" implies that permission is required; "I am going to take a look in the vehicle" does not. Rather, the statement "I am going to . . ." suggests that the speaker will proceed with his intended course of action regardless of the other person's response. See United States v. Stanback, No. TDC-14-0554, 2015 WL 9450822, at *4 (D. Md. Dec. 23, 2015) ("[T]he statement 'I'm going to search your person,' is effectively a command, rather than a request for consent to search."); United States v. Thompson, No. 8:14CR291, 2015 WL 736098, at *9 (D. Neb. Feb. 20, 2015) (finding no consent to a detention, search, or dog sniff when the officer stated, "Ok, I'll tell you what, what I'm going to do is I'm going to run my dog and if he hits on your car, I'm going to search it, if he doesn't you'll be on your way," and the defendant replied, "Alright."). But see United States v. Ponce, 8 F.3d 989, 996–98 (5th Cir. 1993) (finding voluntary consent when officer said he "was going to pat him down," and the defendant responded, "Okay.").

5

Moreover, Leddon's response on its own may not be construed as consent. As the Eighth Circuit emphasized in Escobar, "[s]imply telling a police officer to '[g]o ahead' with a search is not, in and of itself, proof of voluntary consent." 389 F.3d at 786. In Escobar, the police officer lied to the suspects, telling them that the drug-sniffing dog had alerted to their travel bags. Id. at 783. The officer then asked if he could search the travel bags, to which the suspects responded, "Go ahead." Id. The Eighth Circuit noted that law enforcement is free to generally ask questions of an individual even if they have no basis for suspecting that particular individual. Id. at 786. This includes asking for consent to search the individual's travel luggage. Id. However, the officers may not "convey a message that compliance with their requests is required." Id. (citing Florida v. Bostick, 501 U.S. 429, 435 (1991)). The Eighth Circuit found that the officers conveyed a message that the suspects' compliance was required when the officers misrepresented whether there was probable cause to search the travel bags. Id.

Viewed in isolation, Trooper Anderson's statement arguably conveys a message that compliance with his request was required. His statement is not phrased as a question; rather, he merely communicates to Leddon his intended course of conduct. Thus, Leddon's response looks more like acquiescence than permission. To the extent that Judge Moreno found that Trooper Anderson stated, "I'd like to take a look in the vehicle and make sure there's nothing in there," instead of "Alright, I am going to take a look in the vehicle and make sure there's nothing in there," Leddon's objection to Judge Moreno's factual findings is sustained. And if this was the only relevant exchange between Trooper Anderson and Leddon, whether Leddon consented to the search would be a closer question.

But there was much more to the conversation between Leddon and Trooper Anderson leading up to Trooper Anderson's statement that he was going to search the vehicle. Trooper

6

Anderson testified that he saw on his computer that Leddon was on probation or parole. Mot. Hr'g Tr. at 13. Upon learning this, Trooper Anderson asked Leddon what his narcotic of choice was. Ex. 1 at 8:06; Ex. 1A at 5; Mot. Hr'g Tr. at 12–13. Leddon responded that he was arrested for methamphetamine. Ex. 1 at 8:11; Ex. 1A at 5; Mot. Hr'g Tr. at 13. Now, Trooper Anderson testified that he next asked Leddon, "What made you get into that?" Mot. Hr'g Tr. at 13, 35–36. The government even offered a transcript of the conversation into evidence which notes that this is the question that Trooper Anderson asked. Ex. 1A at 5. However, this Court has carefully and repeatedly reviewed the video footage from that day, including both the front dash camera footage and the in-car footage. Trooper Anderson's question upon learning of Leddon's prior arrest for methamphetamine actually was, "Do you have any in your vehicle today?" Ex. 1 at 8:15. While the transcript indicates that Leddon's response was "inaudible," Ex. 1A at 5, Leddon's response can actually be made out when listening carefully to the recording. Leddon responded, "Nope, go right ahead," while shaking his head "no" and gesturing toward his car. Ex. 1 at 8:17. After that, Leddon said something more, but this Court was unable to determine what was said despite playing the recording a number of times. Notwithstanding the transcript's notation of inaudible, Trooper Anderson's testimony confirms that Leddon's response was along the lines of, "Nope, go ahead." Mot. Hr'g Tr. at 13.

      As defense counsel pointed out on cross-examination, Leddon's answer, "Nope, go right ahead," is puzzling if Trooper Anderson's question related to how Leddon got involved with drugs. Mot. Hr'g Tr. at 35–37. Indeed, if the only evidence in this case was Trooper Anderson's testimony and the transcript, this Court would question whether Leddon's response truly was "[n]ope, go right ahead" when such a response is so nonresponsive to a question about how Leddon got involved with drugs. But that is not the only evidence in this case, and as between the video

footage, Trooper Anderson's testimony, and the transcript, this Court credits the video footage as the best evidence in this case.[3]

The video footage shows that Leddon welcomed Trooper Anderson to search his car after Trooper Anderson asked whether Leddon had methamphetamine in his car. Compare Escobar, 389 F.3d at 786 (finding no consent when defendants responded "go ahead" to a statement implying that compliance was required), with Lopez-Mendoza, 601 F.3d at 866 (finding consent when defendant responded "go ahead" to a direct question). Then a minute later, Trooper Anderson asked Leddon if he was on warrantless searches and seizures as a condition of his probation. Ex. 1 at 9:19–9:25, Ex. 1A at 6. After Leddon confirmed that he was, Leddon stated, "Like I said, vehicle is open and everything." Ex. 1 at 9:19–9:25, Ex. 1A at 6. Leddon seems to be referencing the comments he made a minute earlier and reaffirming his offer to Trooper Anderson to search his car. When Trooper Anderson eventually said, "Alright, I am going to take a look in the vehicle . . . ," it was in the context of the previous conversation. At this point, Trooper Anderson merely accepted Leddon's offer to search his vehicle.

Leddon also objects to the Report and Recommendation on the basis that Judge Moreno omitted certain facts from his background discussion. Doc. 67 at 3–4. In particular, Leddon argues that Judge Moreno should have included portions of Trooper Anderson's testimony, including his testimony that there was no probable cause or reasonable suspicion to search the vehicle, his belief that Leddon was subject to warrantless searches and seizures as a condition of his probation, and

---

[3] This Court is by no means suggesting that Trooper Anderson was lying during his testimony. The hearing took place on January 21, 2021. Doc. 57. The incident itself took place more than a year before that on December 24, 2019. From Trooper Anderson's testimony, it appears he is struggling to recall the events from over a year before. It is natural that he would not remember every detail from a conversation that long ago. But while he may not have remembered the question that prompted Leddon's response, he does accurately recall Leddon's response.

that this belief was at least part of his motivation for searching Leddon's vehicle. This Court acknowledges that Trooper Anderson did not have probable cause or reasonable suspicion to search Leddon's vehicle, Mot. Hr'g Tr. at 33–34, and the United States does not assert otherwise. Thus, the only issue before this Court is whether Leddon consented to the search of his vehicle. As this Court has previously noted, the existence of consent is an objective inquiry, turning on whether a reasonable officer would conclude that Leddon consented based on his words and actions. Therefore, whether Trooper Anderson believed that Leddon was subject to warrantless searches and seizures as a condition of his probation or whether that belief motivated Trooper Anderson's actions at least in part is not relevant to the disposition of that question, especially when there is video footage of the entire incident. Therefore, Leddon's objections to those factual omissions are overruled. As Judge Moreno only considered the issue of consent, he properly omitted facts that are not relevant to that analysis.

In sum, this case highlights why context matters. Examining the conversation in its entirety, this Court finds that Leddon consented to a search of his car. Further, Judge Moreno found that Leddon's consent was voluntary. This Court has reviewed Judge Moreno's legal findings as to voluntariness, see Doc. 62 at 6–9, and agrees that Leddon gave his consent voluntarily. Therefore, his motion to suppress is denied.

### III. Conclusion

For the foregoing reasons, it is hereby

ORDERED that Leddon's Objection to the Report and Recommendation, Doc. 67, is sustained to the extent that Judge Moreno found that Trooper Anderson stated, "I'd like to take a look in the vehicle and make sure there's nothing in there," instead of "Alright, I am going to take

a look in the vehicle and make sure there's nothing in there." Leddon's Objection is otherwise overruled. It is further

ORDERED that the Report and Recommendation For Disposition of Motion to Suppress Statements, Doc. 62, is adopted as modified by this opinion. It is further

ORDERED that Leddon's Motion to Suppress, Doc. 50, is denied.

DATED this 16th day of February, 2021.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE